UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
THE DIAMOND COLLECTION, LLC,

                          Plaintiff,          <u>MEMORANDUM & ORDER</u>
                                              17-CV-0061(JS)(SIL)
        -against-

UNDERWRAPS COSTUME CORPORATION,

                          Defendant.
------------------------------------X
APPEARANCES
For Plaintiff:        Lynn Marcy Brown, Esq.
                      Kevin Schlosser, Esq.
                      Meyer Suozzi English & Klein P.C.
                      990 Stewart Avenue, Suite 300
                      Garden City, NY 11530

For Defendant:        Bryan A. McKenna, Esq.
                      1270 Avenue of the Americas
                      16th Floor
                      New York, NY 10020

                      Stewart L. Levy, Esq.
                      Eisenberg Tanchum & Levy
                      675 Third Avenue
                      New York, NY 10017


SEYBERT, District Judge:

        Before the Court is a motion by Plaintiff the Diamond

Collection, LLC ("Plaintiff" or "Diamond") to dismiss

counterclaims (Pl.'s Mot., D.E. 37) in the Amended Answer of

Defendant Underwraps Costume Corporation ("Defendant" or

"Underwraps") (Am. Answer, D.E. 35).

        For the following reasons, Plaintiff's motion is GRANTED

IN PART and DENIED IN PART.

BACKGROUND

Diamond and Underwraps sell Halloween costumes. In December 2016, both companies attended a trade show. Underwraps observed Diamond distributing a catalog (the "catalog"). Underwraps believes that the catalog itself looked like Underwraps' catalog, and that the costumes in the catalog looked like Underwraps' costumes. This action concerns allegations of copyright and trade dress infringement with the catalog and the costumes.

I.  Relevant Procedural History

Diamond filed a complaint in January 2017, seeking a declaratory judgment that Diamond had not and is not infringing on Underwraps' claimed intellectual property rights. (Compl., D.E. 1.) Diamond filed an Amended Complaint in February 2017. (Am. Compl., D.E. 13.) Underwraps filed its First Answer to the Amended Complaint in August 2017. (First Answer, D.E. 28.) The First Answer contained counterclaims for copyright infringement, trade dress infringement, false designation of origin, unfair competition, and trademark dilution under the Lanham Act, 16 U.S.C. § 1051 et seq., and the New York General Business Law § 360-1 (NYGBL); false endorsement under the Lanham Act; deceptive practices under the NYGBL § 349; misappropriation; and common law trademark infringement. Diamond moved to dismiss the counterclaims. (Pl.'s First Br., D.E. 29-6.)

The Court (Spatt, J.) granted Diamond's motion to dismiss in its entirety. Diamond Collection, LLC v. Underwraps Costume Corp., No. 17-CV-0061, 2018 WL 1832928 (E.D.N.Y. April 16, 2018) (Diamond 1, D.E. 32). The Court dismissed Underwraps' NYGBL counterclaims with prejudice, finding them "preempted by federal and trademark and copyright law." Id. at *8.[1] As to the remaining claims, however, the Court granted Underwraps leave to replead by filing an amended answer.

As to copyright infringement, the Court observed that Underwraps' First Answer did not describe any of its copyrighted patterns or Diamond's allegedly similar costumes and it was "left to speculate as to what [they] look like." Diamond 1, at *1. The Court also noted that the First Answer did not describe how the parties' catalogs were substantially similar. Though Underwraps had attached pages from the catalogs to its opposition to the motion to dismiss, the Court did not consider them because Underwraps, "as a represented party, should have attached the exhibits to its answer, not to its opposition to the motion to dismiss." Id. at *3. In any event, Underwraps had not stated that the pictures attached represented the copyrighted patterns.

---

[1] The first answer also contained counterclaims for misappropriation of skill and labor. The Court deemed them abandoned and in any event, not sufficiently supported by the pleadings. Diamond 1, at *8-9. Underwraps does not revisit these claims or arguments in its Amended Answer or opposition.

The Court could not "even begin to make the evaluation because [Underwraps] ha[d] neither described the patterns at issue nor . . . supplied photographs of those patterns to the Court." Id. at *5. "Simply stating that the costumes [and catalog] were 'identical or substantially similar' is a legal conclusion that [the] Court need not accept as true." Id. at *4.

With respect to trade dress, the Court noted that "when amending [Underwraps'] answer," images alone would not suffice, and that Underwraps must "'ultimately point to the distinctive elements,'" which it had not done. Id. at *6 (quoting Classic Touch Décor, Inc. v. Michael Aram, Inc., No. 15-CV-0453, 2015 WL 6442394, at *5 n.2 (E.D.N.Y. Oct. 23, 2015)). The Court further found that Underwraps "failed to allege how its marks are distinctive" and thus "failed to state claims for false designation of origin, unfair competition, or trademark dilution under the Lanham Act, and for trademark infringement under New York common law upon." Id. at *7.

Underwraps' Amended Answer contains four amended counterclaims, again alleging: (1) copyright infringement under 17 U.S.C. § 501 (the Copyright Act); (2) trade dress infringement, false designation of origin, unfair competition and trademark dilution under the Lanham Act; (3) false designation of origin and unfair competition under the Lanham Act; and (4) false endorsement under the Lanham Act. (See Am. Answer.) Diamond again

moves to dismiss the counterclaims.  (See Pl.'s Mot.; Pl.'s Br.,
D.E. 39.)  For the following reasons, Diamond's motion is GRANTED
IN PART and DENIED IN PART.

DISCUSSION

I.   Standard for Motions to Dismiss Counterclaims

"A motion to dismiss a counterclaim is evaluated under
the same standard as a motion to dismiss a complaint." Diamond 1,
2018 WL 1832928, at *3.  In deciding Rule 12(b)(6) motions to
dismiss for failure to state a claim, the Court applies a
"plausibility standard," which is guided by "[t]wo working
principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct.
1937, 1949, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572
F.3d 66, 71–72 (2d Cir. 2009).  First, although the Court must
accept all allegations as true, this "tenet" is "inapplicable to
legal conclusions;" thus, "[t]hreadbare recitals of the elements
of a cause of action, supported by mere conclusory statements, do
not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (citing
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955,
1965, 167 L. Ed. 2d 929 (2007)); see Harris, 572 F.3d at 72.
Second, only complaints that state a "plausible claim for relief"
can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at
679 (citing Twombly, 550 U.S. at 556).  Determining whether a
complaint does so is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." Id. (citation omitted); accord Harris, 572 F.3d at 72.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), but this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–52 (2d Cir. 2002); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

## II. Underwraps' Counterclaims

### A. Copyright Infringement (First Counterclaim)

"To successfully plead a claim for copyright infringement, 'a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's.'" Diamond 1, 2018 WL 1832928, at *4 (quoting Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010) (further quotation omitted). "Rule 8 requires that the alleged infringing acts be stated with some specificity."

_Palmer Kane LLC v. Scholastic Corp._, No. 12-CV-3890, 2013 WL
709276, at *2 (S.D.N.Y. Feb. 27, 2013) (citation omitted).

Where a party claiming infringement attaches the works
to its pleadings, "the works themselves supersede and control
contrary descriptions of them, including any contrary allegations,
conclusions or descriptions of the works contained in the
pleadings." _Wager v. Littell_, No. 12-CV-1292, 2013 WL 1234951, at
*2 (S.D.N.Y. Mar. 26, 2013) (_aff'd_ 549 F. App'x 32 (2d Cir. 2014));
_see also_ _Well-Made Toy M'fg. Corp. v. Flowers, Inc._, No. 16-CV-
1380, 2016 WL 6537673, at *2 (E.D.N.Y. Nov. 3, 2016).

It is "entirely appropriate for the district court to
consider the similarity between works [attached to the pleadings]
in connection with a motion to dismiss" and properly resolve the
issue at this stage. _Peter F. Gaito Architecture_, 602 F.3d at
64). "If the court considers the complaint and the works
themselves and determines that 'the similarity between two works
concerns only non-copyrightable elements of the plaintiff's work,
or . . . no reasonable jury, properly instructed, could find that
the two works are substantially similar,' the court may dismiss
the complaint for failure to state a claim for copyright
infringement." _Kimberley v. Penguin Random House_, No. 17-CV-5107,
2018 WL 1918614, at *2 (S.D.N.Y. Apr. 19, 2018) (quoting _Peter F._
_Gaito Architecture_, 602 F.3d at 63) (ellipsis in original). Here,

however, in making the evaluation, the Court finds that the works are similar enough to survive a motion to dismiss.

At the outset, this time, Underwraps has attached photos of its copyrighted costumes and Diamond's costumes for comparison as exhibits to the Amended Answer. While Diamond makes much of the fact that Underwraps has not pleaded, in writing, "how [Diamond's] costumes are substantially similar to [Underwraps'] copyrighted patterns," (Pl.'s Br., at 2 (citing Diamond 1, 2018 WL 1832928, at *1)), the Court believes that in this case, photos are a more accurate and efficient way to demonstrate the similarities. Indeed, attaching photos of the copyrighted costume designs along with the allegedly infringing costumes was expressly contemplated by the prior order (see Diamond 1, 2018 WL 183298, at *5). It is certainly more effective here to show how two things look the same than to tell how two things look the same. As Diamond observes, "the works themselves supersede . . . any contrary allegations, conclusions or descriptions of the works contained in the pleadings." (Pl.'s Br. at 6 (quoting Wager, 2013 WL 1234951, at *5).) A picture is worth a thousand words (in an amended pleading).[2] With the Amended Answer and the attached photos, the Court can consider, as discussed herein, the claimed protectable

---

[2] In any event, Underwraps describes in writing, in great detail, the features and similarities of its costumes and Diamond's in its trade dress infringement counterclaim.

elements, whether those elements are separable from the useful articles, and issues of access and substantial similarity.

      1. <u>Valid Copyright; Registration and Pending Application</u>

      Copyright infringement requires ownership of a valid copyright. <u>See</u> <u>Wager</u>, 2013 WL 1234951, at *2. At the time it filed its Amended Answer, Underwraps had applied for but not received registrations for its Skeletal Bones Print (Ex. B-1, D.E. 35-2 at 1) and Skull and Crown Material (Ex. E-1, D.E. 35-5 at 1). Though Diamond is correct that some courts have held that a pending application fails to satisfy Copyright Act requirements, the Second Circuit "has not yet determined . . . whether a merely pending application for registration satisfies the Act's requirement that a work be registered before a related infringement suit is filed." <u>A Star Grp., Inc. v. Manitoba Hydro</u>, 621 F. App'x 681, 683 (2d Cir. 2015) (citing 17 U.S.C. § 411(a). At least one Court has recently cited <u>A Star Group</u> and allowed a party alleging infringement to proceed when its application is still pending. <u>See</u> <u>Chevrestt v. Am. Media, Inc.</u>, 204 F. Supp. 3d 629, 631 (S.D.N.Y. 2016) ("It is hard to see what public, private, or statutory interest is served or harmed by requiring [plaintiff] to wait, and re-file his action after his application is approved or denied, when he has already done everything he can to obtain that result."). Even where a Court dismisses an action because an application is pending and the copyright is not yet registered, it

may do so without prejudice to refile.  See Rudkowski v. MIC Network, Inc., No. 17-CV-3647, 2018 WL 1801307, at *3 (S.D.N.Y. March 23, 2018).  This Court agrees that "[g]iven that the claimant who has submitted an application that has yet to be acted upon at that juncture has done all that she can do, and will ultimately be allowed to proceed regardless of how the Copyright Office treats her application, it makes little sense to create a period of "legal limbo" in which suit is barred." Chevrestt, 204 F. Supp. 2d. at 631.  Underwraps may proceed on its counterclaims for the pending applications.

    2. Separability

    Underwraps does not claim copyright protections in its costumes, but in the "designs as depicted on some of its costumes." (Def.'s Br., D.E. 44, at 7 (emphasis in original).)  Both parties appear to agree (Def.'s Br. at 7-8; Pl.'s Br. at 10-12) that the costumes are "'useful article[s]'" that have "'an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information.'" Star Athletica, L.L.C. v. Varsity Brands, Inc., 137 S. Ct. 1002, 1008, 197 L. Ed. 2d 354 (2017) (quoting 17 U.S.C. § 101); see also Whimsicality, Inc. v. Battat, 27 F. Supp. 2d 456, 463 (S.D.N.Y. 1998) (costumes are useful articles only copyrightable "to the extent that the article 'incorporates pictorial, graphic or sculptural features that can be identified separately from, and are capable of existing

independently of, the utilitarian aspects of the article'")
(quoting 17 U.S.C. § 101).  This necessitates a separability
analysis.

In Star Athletica, the Supreme Court looked to the
Copyright Act and held that "a feature of the design of a useful
article is eligible for copyright if, when identified and imagined
apart from the useful article, it would qualify as a pictorial,
graphic, or sculptural work either on its own or when fixed in
some other tangible medium."  137 S. Ct. at 1012.  The
"decisionmaker" must first "look at the useful article and spot
some two- or three-dimensional element that appears to have
pictorial, graphic, or sculptural qualities." Id. at 1010.  Next,
"the decisionmaker must determine that the separately identified
feature has the capacity to exist apart from the utilitarian
aspects of the article." Id.  In applying this test, the Supreme
Court found that the "arrangement of colors, shapes, stripes, and
chevrons on the surface of [ ] cheerleading uniforms" were
separable and entitled to copyright protection.  Id. at 1012.

A recent District Court decision applying Star Athletica
to the alleged copyright infringement of a banana costume is
instructive.[3]  The court found "a likelihood that [the plaintiff

---

[3] At the time of this writing, the Second Circuit has not written
on Star Athletica, and few District Courts in the Circuit have
cited it.

could] prove that the banana design can both be identified separately from and can exist independently from the utilitarian aspects of the article." Silvertop Assocs., Inc. v. Kangaroo Mfg., Inc., 319 F. Supp. 3d 754, 764 (D.N.J. 2018). The Court identified the length, shape, curvature, jet black color of both ends, location of the head and arm holes, the soft and shiny look of the fabric, the lines on the banana, and the bright golden yellow as separable features having "a pictorial, graphic, or sculptural quality." Id. It concluded that "although [the costume used] elements that might in and of themselves not be protectable standing alone, that the design when considered as a whole is separable and eligible for copyright protection." Id. at 765.

Applying the two-part Star Athletica test, this Court finds that the Underwraps costumes have design elements separable from their utilitarian bases. At the first step, which is "not onerous," the Court can "spot some two- or three-dimensional element[s] that appear[ ] to have pictorial, graphic, or sculptural qualities." Star Athletica, 137 S. Ct. at 1010. For example, there are ruffles and bowties on the Dia de los Muertos costumes with clear graphic and artistic qualities. (Ex. B-1, D.E. 35-2, at 1.) There are graphic skeleton patterns on the lace poncho. (Ex. D-1, D.E. 35-4, at 1.) The Evil Harlequin has a pattern of nefarious looking jesters interposed with diamonds. (Ex. G-1, D.E. 35-7, at 1.) Underworld has the graphic of a skeleton rising

out of burning flames.[4] (Ex. H-1, D.E. 35-8, at 1.) At the second step, all of these features could be removed from the costumes. Their "primary purpose . . . is artistic; once [the features] are removed, the remainder is a functioning but unadorned [article of clothing]." Jetmax Ltd. v. Big Lots, Inc., No. 15-CV-9597, 2017 WL 3726756, at *6 (S.D.N.Y. Aug. 28, 2017) (applying Star Athletica to decorative light strings and denying cross motions for summary judgment). The Amended Answer "pleads separability in including . . . picture[s] of the [costumes], which allows the Court to determine that a pictorial, graphic, or sculptural feature can be identified separately from and exist independently of the utilitarian aspects." Silvertop, 319 F. Supp. 3d at 770 n.13. Thus, these elements are protectable, and the Court turns to whether they were copied.

### 3. Access and Substantial Similarity

"In the absence of direct evidence, copying is proven by showing (a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible material in the two works." Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996)

---

[4] To the extent Diamond argues that there is essentially no other way to depict or convey a skeleton, "[t]o prove that a work is original, it must . . . possess at least some minimal degree of creativity." Jetmax Ltd. v. Big Lots, Inc., No. 15-CV-9597, 2017 WL 3726756, at *6 (S.D.N.Y. Aug. 28, 2017) (internal quotation marks and citations omitted). The Court finds that Underwraps' conception of a skeleton on a suit displays, at least at the pleadings stage, originality and creativity.

(internal quotation marks and citation omitted). "Access means that the alleged infringer had an opportunity to [actually] view or copy [a copyright holder's] work." Wager, 2013 WL 1234951, at *3 (internal quotation marks and citation omitted). "As an alternative to showing direct or indirect access, a plaintiff may prove access by establishing striking similarity between the works." Wager, 2013 WL 1234951, at *3 (internal quotation marks and citations omitted) (emphasis added). "When establishing copying by circumstantial evidence, 'there is an inverse relationship between access and probative similarity such that the stronger the proof of similarity, the less the proof of access is required.'" L.A. T-Shirt & Print, Inc. v. Rue 21, Inc., No. 16-CV-6400, 2017 WL 3575699, at *3 (S.D.N.Y. Aug. 17, 2017) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 56 (2d Cir. 2003)).

Underwraps alleges that it observed costumes at a trade show that were "substantially similar, if not identical, to the costumes depicted in the catalog of costumes distributed by Underwraps . . . which was readily available to [Diamond]." (Am. Answer ¶ 151.) It further states that its costumes and catalogs were marketed and used at "trade shows, direct mail, online, and otherwise." (Am. Answer ¶ 159.)

The Court finds that while the pleadings may not have sufficiently alleged access by simply stating that Underwraps distributed its catalogs (with the implication being that Diamond

saw the catalogs before it came out with the works at issue),[5] "[v]iewed in the light most favorable to [Underwraps], it is . . . plausible that [Diamond's] designs are strikingly similar to the protected elements of [Underwraps'] works." L.A. T-Shirt & Print, 2017 WL 3575699, at *7. "The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." Schleifer v. Berns, No. 17-CV-1649, 2017 WL 3084406, at *3 (S.D.N.Y. July 19, 2017) (quoting Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 111 (2d Cir. 2001)). "[T]he threshold required to establish striking similarity is stringent, and it requires more than a showing of substantial similarity. To show striking similarity, the works must be so identical as to preclude any reasonable possibility of independent creation." Webb v. Stallone, 910 F. Supp. 2d 681, 687 (S.D.N.Y. 2012) (aff'd 555 F. App'x 31 (2d Cir. 2014)) (internal quotation marks and citations

---

[5] The Court does not find this implication to be unreasonable. "Access may be established directly or inferred from the fact that a work was widely disseminated or that a party had a reasonable possibility of viewing the prior work." Boisson v. Banian, Ltd., 273 F.3d 262, 270 (2d Cir. 2001); see also Nobile v. Watts, 289 F. Supp. 3d 527, 533 (S.D.N.Y. 2017) ("all that is required is that the plaintiff have circumstantial evidence that the alleged infringer had 'access' to the allegedly infringed work."). Because the Court finds the works strikingly similar, however, it need not decide whether Underwraps has alleged access.

omitted).  Here, in viewing the photos, the Court finds that most of the costumes at issue are not merely substantially similar, but strikingly similar.[6]

For example, Underwraps' Lace Poncho Skeleton (VA-2-047-251, Ex. D-1, D.E. 35-4, at 1) is nearly identical to Diamond's White Skeleton Poncho (Ex. B-3, D.E. 35-2, at 3).  Both are sheer white ponchos designed to be worn over an undergarment (the catalogs both depict the poncho worn over a black shirt).  They each have the image of a skeletal torso down the front. Additionally, both are edged in a design that alternates a skull and crossbones to form a chain around the entire hem.  They have nearly identical necklines and are the same length.  Next, Underwraps' Dia de los Muertos Material Pattern (VA 2-047-234, Ex. B-1, D.E. 35-2, at 1) is difficult to distinguish from Diamond's Senor Muerto and Queen Corpse (Ex. B-2, D.E. 35-2, at 2).  The female costumes have a black top imprinted with a skeletal torso. The skirts are black with two ruffles.  The material of the ruffles has red roses and skulls and is positioned on the skirts in the same manner, hitched up on the side with what appears to be a slit over the thigh.  The material from the ruffles appears on the male costume, as both a cummerbund and necktie.  Underwraps' Jester/Evil

---

[6] Some of the costumes may only be substantially similar. However, the striking similarity of the majority of the costumes is enough for this Court to plausibly infer that Diamond had access to Underwraps' copyrighted works.

Harlequin (VA 2-047-242, Ex. G-1, D.E. 35-7, at 1) closely resembles Diamond's Wicked (Ex. G-2, D.E. 35-7, at 2). Both feature a short top coat with two buttons, wide black lapels, and tails. The coat has vertical black and white stripes down the right side. The left side is covered in a diamond pattern that includes jesters in the black diamonds. The pants each alternate the vertical stripes with the diamond pattern--stripes down the left leg, diamonds down the right. Underwraps' Underworld (VA 2-046-593, Ex. H-2, D.E. 35-8, at 1) is almost impossible to distinguish from Diamond's Flaming Demon (Ex. H-2, D.E. 35-8, at 2). Both are loose hooded garments that come down to the wearer's feet. Each is imprinted with a skeleton that appears to be rising from, or walking through, flames. The flames are placed similarly near the bottom of the garment, the hems of the draped sleeves, and the hood. The Court would be hard pressed to conclude the Diamond designers envisioned and created these works independently of and with no reference to Underwraps' designs.

Because "where the works in question are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access," Jorgensen v. Epic/Sony Records, 351 F.3d 46, 56 (2d Cir. 2003), the Court finds that Underwraps has plausibly pleaded its counterclaim for copyright infringement.

B.   Trade Dress Infringement, False Designation of Origin,
     Unfair Competition, and Trademark Dilution under the
     Lanham Act (Second and Third Counterclaims)

Underwraps next claims that Diamond has infringed upon the trade dress of its catalog and costumes. (See Am. Answer ¶ 158.) "Trade dress originally included only the packaging, or dressing, of a product, but it has been expanded to encompass . . . the design or configuration of the product itself." Yurman Design, 262 F. 3d at 114 (internal quotation marks and citation omitted). It "'encompasses a broad concept of how a product presented to the public looks, including its color, design, container, and all the elements that make up its total appearance.'" GeigTech East Bay LLC v. Lutron Elecs. Co., Inc., No. 18-CV-5290, 2018 WL 6518858, at *2 (S.D.N.Y. Nov. 29, 2018) (quoting Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 1001 (2d Cir. 1997)). "Catalogs, like packaging, can also dress products by promoting and displaying them for sale to potential customers." Gerffert Co., Inc. v. Dean, 41 F. Supp. 3d 201, 210 (E.D.N.Y. 2014) (citing Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc., 280 F. 3d 619, 630 (6th Cir. 2002) ("trade dress has been held to include . . . the layout and appearance of a mail-order catalog") (internal quotation marks omitted); Hofmann v. Kleinhandler, No. 93-CV-5638, 1994 WL 240335, at *4 (S.D.N.Y. May 31, 1994) ("courts in this Circuit have held

that brochures and catalogues can constitute trade dress")
(collecting cases)).

To state a claim for trade dress infringement,
Underwraps must first "offer a precise expression of the character
and scope of the claimed trade dress." GeigTech, 2018 WL 6518858
at *2 (quoting Urban Grp. Exercise Consultants, Ltd. v. Dick's
Sporting Goods, Inc., No. 12-CV-3599, 2012 WL 3240442, at *3
(S.D.N.Y. Aug. 12, 2012). It must identify specific trade dress
elements and explain why they are distinctive. See id. at *4; see
also Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 210, 120
S. Ct. 1339, 1343, 146 L. Ed. 2d 182 (2000) ("nothing in [the
Lanham Act] explicitly requires a producer to show that its trade
dress is distinctive, but courts have universally imposed that
requirement, since without distinctiveness the trade dress would
not 'cause confusion . . . as to the origin, sponsorship, or
approval of [the] goods,' as the [Act] requires.") (quoting The
Lanham Act § 43(a). "[I]nability to explain to a court exactly
which aspects of its product design(s) merit protection may
indicate that its claim is pitched at an improper level of
generality." Yurman Design, 262 F. 3d at 117.

Once Underwraps has identified the character and scope
of its purported its trade dress, it must plausibly allege "(1)
that the mark is distinctive as to the source of the good; (2) a
likelihood of confusion between its good and [Diamond's]; and, (3)

that the trade dress is not functional." Vedder Software Grp. Ltd. v. Ins. Servs. Office, Inc., 545 F. App'x 30, 33 (2d Cir. 2013) (summary order) (citing Yurman Design, 262 F.3d at 115-16. "The non-functionality and distinctiveness elements relate to the protectability of [Underwraps'] trade dress, whereas the likelihood of confusion element relates to whether [Diamond is] liable for copying it." Gerffert Co., 41 F. Supp. 3d at 211. These elements can intertwine: "'[t]he nonfunctionality requirement substantially overlaps with the prohibition on overbroad [i.e., generic [nondistinct]] marks." Gerffert Co., 41 F. Supp 3d at 211 n.24 (quoting Yurman Design, 262 F.3d at 116 n.5).

      1. Non-Functionality

      Under the Lanham Act, "the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. 1125(a)(3). "A product feature is functional, . . . if it is essential to the use or purpose of the article or if it affects the cost or quality of the article. And in cases involving an aesthetic feature, the dress is also functional if the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage." Yurman Design, 262 F.3d at 116 (internal quotation marks and citations omitted).

2. Distinctiveness

"Distinctiveness requires a showing that the mark has secondary meaning, so that in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product itself." Vedder Software, 545 F. App'x at 33. (internal quotations marks and citation omitted). "To determine whether secondary meaning has attached, the court considers six factors: '(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use.'" Cartier, Inc. v. Sardell Jewelry, Inc., 294 F. App'x 615, 618 (2d Cir. 2008) (summary order) (quoting Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc., 65 F.3d 1063, 1070 (2d Cir. 1995)).

3. Likelihood of Confusion

In Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961), the Second Circuit listed "nonexclusive factors of the Polaroid test to analyze whether Defendant's trade dress is likely to cause confusion as to the source of its product: '(1) the strength of the plaintiff's mark; (2) the similarity of the parties' marks; (3) the proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will bridge the gap between the products; (5) actual consumer confusion between the two marks; (6) the defendant's intent or any bad faith in

adopting its mark; (7) the quality of the defendant's product; and
(8) the sophistication of the relevant consumer group.'" GeigTech,
2018 WL 6518858 at *11 (quoting Cartier, Inc., 294 F. Appx at 619).

### 4. Underwraps has not Sufficiently Alleged Trade Dress Infringement in the Catalog

Underwraps has expanded upon its trade dress
infringement counterclaims and includes many facts that were not
in the First Answer. (Compare First Answer, ¶¶ 157-62, with Am.
Answer, ¶¶ 157-67. However, the Court finds that the claims are
still "pitched at an improper level of generality" and Underwraps
has not identified the character and scope of its claimed trade
dress. Yurman Design, 262 F. 3d 17 117; see also Vedder Software,
545 F. App'x at 33 (allegations of "a 'distinctive interface' of
'non-functional elements' with a 'secondary meaning'" . . . and
"conduct [that] is 'likely to cause confusion or mistake'" . . .
were "bare assertions 'amount[ing] to nothing more than a formulaic
recitation of the elements" of a trademark infringement claim")
(quoting Iqbal, 556 U.S. at 661, 129 S. Ct. 1937). The
photographs, which the Court notes would not be sufficient standing
alone, do not adequately demonstrate trade dress even when coupled
with the written pleadings (see Diamond 1, at *6 ("images alone do
not satisfy the plaintiff's obligation to articulate the
distinctive features of the trade dress") (internal quotation
marks and citation omitted). Merely describing its products and

providing pictures of them does not distinguish a particular trade dress.

The Court additionally finds most of the catalog trade dress elements listed by Underwraps to be non-distinct. It alleges that Diamond copied its (1) listing of the prices next to the costumes; (2) using only two sizes for costumes (Underwraps' being "one size" and "XXL" and Diamond's being "standard" and "XXL"); (3) binding the catalogs with a glue bound edging; (4) featuring only one or two models per page; and (5) the specific posing of the models. (See Am. Answer ¶ 161.) The Court recognizes that "[a] unique combination of elements may make a dress distinctive," (Yurman Design, 262 F. 3d at 118), but the elements listed by Underwraps, even all together, are so commonplace and prevalent among mail order catalogs that the catalog simply cannot be viewed as distinctive trade dress. To hold that these elements together are distinct would make it difficult for other costume companies to display and advertise their goods in catalog form and seriously undermine the "strong federal policy in favor of vigorously competitive markets." Id. (internal quotation marks and citation omitted).

The Court also finds that many of these features are functional, and thus the trade dress infringement claim as to the catalog is insufficient on that basis. For example, listing a price next to an item in a catalog is a common function to let

consumers know how much it costs.  Binding a catalog on the side has the function of keeping the pages together.  Further, to the extent Underwraps alleges customer confusion, the Court finds that this likely results from the costumes themselves, and not the generic manner of displaying them in the catalog.

Underwraps also alleges that its catalog has acquired secondary meaning in the minds of consumers through "longstanding and continuous marketing, promotion and use of its costumes and inherently distinctive [c]atalog [t]rade [d]ress."  (Am. Answer ¶ 159.)  Underwraps has not, however, specifically referenced advertising expenditures, consumer studies, unsolicited media coverage, sales success, or the length of the use.  The Court finds that these allegations are not sufficient to plausibly allege that the catalog has acquired secondary meaning.  "Because [the] catalog[ ] . . . [is] not inherently distinctive and did not become distinctive by acquiring secondary meaning, [it is] not protectable trade dress."  Gerffert Co., 41 F. Supp. 3d at 210 (internal quotation marks omitted).  Underwraps' counterclaim for catalog trade dress infringement is DISMISSED.

5. Underwraps Has Not Sufficiently Alleged Trade Dress Infringement in the Costumes

Underwraps alleges that "[t]he total image and design of Underwraps' costumes include primarily non-functional and inherently distinctive elements of size, shape, color, or color

combinations, texture, and graphics." (Am. Answer ¶ 158.) It
appears that Underwraps seeks trade dress protection for its entire
costume line and uses the specific costumes listed in its pleadings
as "examples." (Am. Answer ¶ 164.) The Second Circuit has noted
that when a plaintiff seeks protection for "an entire product line
. . . concern for protecting competition is . . . particularly
acute." Yurman Design, 262 F. 3d at 116 (internal quotation marks
and citations omitted). "[T]he focus on the overall look of a
product [or products] does not permit a plaintiff to dispense with
an articulation of the specific elements which comprise its
distinct dress." Id. at 117 (internal quotation marks and citation
omitted) (emphasis deleted; second alteration in original). While
Underwraps may have plausibly alleged copyright infringement for
the individual costumes described and depicted in its Amended
Answer, it does not automatically follow that it has plausibly
alleged trade dress infringement for its entire costume line.

Though the costumes themselves are strikingly similar,
Underwraps has not adequately alleged that they are so distinct as
to automatically be associated with the Underwraps brand by
consumers. While consumers could easily conclude, after viewing
each set side by side, that the costumes were made by the same
company, it is less clear that they would immediately conclude
that the company was Underwraps. Underwraps has demonstrated that
its costumes are similar to Diamond's; it has not, however,

25

identified the particular character and scope of its purported costume trade dress. Again, the photographs of the costumes do not change the Court's conclusion. Underwraps' counterclaim for costume trade dress infringement is DISMISSED.

### 6. Underwraps has not Adequately Pled False Designation of Origin, Unfair Competition, or Trademark Dilution

"Courts employ substantially similar standards when analyzing claims for trademark infringement under the Lanham Act . . .; false designation of origin under the Lanham Act . . .; trademark infringement under New York common law; and unfair competition under New York common law . . . [t]hat standard is the same as the one employed for Lanham Act trade dress claims." Diamond 1, at *7 (internal quotation marks and citations omitted; first and second ellipses in original). Therefore, for the reasons already discussed with respect to trade dress, Underwraps' counterclaims for false designation of origin and unfair competition are DISMISSED as they have not been plausibly alleged.

Furthermore, "[t]o prevail on a federal trademark dilution claim, a plaintiff must prove that (1) its mark is famous and distinctive, (2) its mark is used in commerce by the defendant, and (3) the defendant's use is likely to cause dilution through either 'blurring' or 'tarnishment.'" Id. (citation omitted). Underwraps has not adequately alleged trademark dilution and

indeed, does not argue in its opposition that it has.  This counterclaim is DISMISSED.

      C.    <u>False Endorsement (Fourth Counterclaim)</u>

          A claim for false endorsement requires that the claimant allege "that the defendant, (1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to origin, sponsorship, or approval of the goods or services." <u>Burck v. Mars, Inc.</u>, 571 F. Supp. 2d 446, 455 (S.D.N.Y. 2008) (citations omitted).

          Underwraps has attached emails from customers as exhibits to its Amended Answer.  The "likelihood of confusion is a factual question, centering on the probable reactions of prospective purchasers of the parties' goods," and these emails demonstrate actual consumer confusion.  <u>Pirone v. MacMillan, Inc.</u>, 894 F.2d 579, 584 (2d Cir. 1990).  Underwraps has also alleged that an online search for "Pizazz costumes" (Pizazz being a division of Diamond) actually returns Underwraps costumes and attached screen shots of the relevant searches and results. (Screen Shots, D.E. 35-10.)  While it remains to be seen whether Diamond specifically intended this result, at this stage, Underwraps has alleged that Diamond made a false or misleading representation of fact.  Thus, the Court finds that Underwraps has plausibly stated a claim for false endorsement.

## III. Leave to Replead

Although leave to replead is freely given when justice requires, Underwraps has not demonstrated how the "deficiencies [in its Amended Answer] may be cured with the addition of factual allegations." Diamond 1, at *10. Further, Underwraps has already been given an opportunity to amend its pleadings and shore up the deficiencies. Underwraps request for further leave to amend its counterclaims is DENIED.

## CONCLUSION

For the foregoing reasons, Diamond's motion is GRANTED IN PART and DENIED IN PART. Underwraps' second and third counterclaims for trade dress infringement, false designation of origin, unfair competition, and trademark dilution are DISMISSED WITH PREJUDICE. Underwraps' first counterclaim for copyright infringement and fourth counterclaim for false endorsement remain. The Clerk of the Court is directed to docket Exhibits A, B, C, D, E, F, G, and H (1-8) from Underwraps' Amended Answer (D.E. 35) with this Order for reference.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     January   22  , 2019
           Central Islip, New York